1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LUIS LORENZO ARMENTERO,

11            Plaintiff,                    No. CIV S-06-1838 GEB KJM P

12        vs.

13   MATTHEW KRAMER, et al.,

14            Defendants.              FINDINGS & RECOMMENDATIONS

15   _____/

16            Plaintiff is a state prison inmate proceeding pro se with a civil rights action under

17   42 U.S.C. § 1983.  In his amended complaint, he alleges that defendants Levan, Burchfield,

18   Mineau and Taylor, all employees of the California Department of Corrections and

19   Rehabilitation (CDCR), improperly classified him as "Mexican" when they knew his ethnicity

20   should have been listed as "other" because he is Cuban.  He further alleges that this places him in

21   jeopardy because of the "black inmates and Mexican inmates, prison gang members, as well as

22   his own ethnicity inmates, all will retaliate upon him."  Amended Complaint (Am. Compl.) at

23   5(A).  Defendants have filed a motion for summary judgment on the merits or in the alternative

24   for dismissal based on plaintiff's failure to exhaust administrative remedies.

25   /////

26   /////

1

I. <u>The Motion For Summary Judgment</u>

    A.  Summary Judgment Standards Under Rule 56

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  <u>See id.</u> at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u> at 323.

        If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the

dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

On May 5, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

B.  Facts

Plaintiff entered the state prison system on July 28, 2005, accompanied by a probation report, which identified him as "Hispanic."  Declaration of K.J. Anderson (Anderson Decl.) ¶¶ 4, 6-7 & Ex. B.  Prison officials at North Kern State Prison (NKSP) Reception Center used this information to identify plaintiff as Mexican even though plaintiff told the officials that he is Cuban.  Anderson Decl. ¶ 7; Opposition (Opp'n) at 3.[1]  Plaintiff's ethnicity as "Mexican" was nevertheless entered into his central file and in OBIS, an electronic database that maintains information about CDCR inmates.  Anderson Decl. ¶ 7.  This material was included on the CDC-135 Transfer Order that accompanied plaintiff from NKSP to Folsom State Prison (FSP) in September 2005.  Declaration of J. Mineau (Mineau Decl.) ¶¶ 6, 9 & Ex. A.

As part of the transfer process, an inmate's file is reviewed at Receiving and Release (R&R) and he is housed with other transferees for orientation.  Anderson Decl. ¶ 10.  At R&R, an inmate's photo is taken for his FSP ID card and for his central file.  Anderson Decl. ¶ 13; Declaration of M. Burchfield (Burchfield Decl.) ¶¶ 2-3.  When an officer enters an inmate's CDCR number into the computer, information about the inmate, including his ethnicity, appears on the screen.  Burchfield Decl. ¶ 4; Anderson Decl. ¶ 13.  Correctional officers do not have the authority to change an inmate's ethnicity designation in the photo lab and the equipment in the lab does not have the capability to change any information about the inmate.  Levan Decl. ¶ 8; Burchfield Decl. ¶ 6; Mineau Decl. ¶¶ 5, 12.  The card is printed with the information that had appeared on the computer screen, generated by OBIS.  Burchfield Decl. ¶ 8.  Only designated

---

[1]  The opposition is signed under penalty of perjury, so the court is treating it as an affidavit.

1  staff members have the authority to change or edit any information in OBIS.  Burchfield Decl.

2  ¶ 7; Anderson Decl. ¶¶ 15-16.

3  　　　　Plaintiff was transferred to FSP in September and went to the photo lab on arrival

4  in R&R, either on September 15 or September 19, 2005.  Deposition of Luis Armentero

5  (Armentero Depo.) at 11:16; Anderson Decl. ¶ 13 & Ex. A.  According to Armentero, Burchfield

6  and Levan were on duty.  Armentero Depo. at 11:20-21.  Burchfield acknowledges working in

7  the photo lab on some occasions in September 2005; Levan was not on duty from September 12

8  through September 18.  Burchfield Decl. ¶ 2; Declaration of C. Levan (Levan Decl.) ¶ 2.  Even

9  though Armentero said he is Cuban, his ID card identified him as Mexican.  Armentero Depo. at

10  11:22-23, 12:15-16.  When he protested, the officers told him to see his counselor.  Id. at 12:17.[2]

11  　　　　Plaintiff lost his identification card and returned to the photo lab on September 22,

12  where he was again issued a card designating him as Mexican.  Id. at 26:10-11.  The officer who

13  created this card again told him to see his counselor about changing his ethnicity.  Id. at 26:13-

14  14.  He encountered Sergeant Mineau as he left the photo lab and complained about the ethnic

15  designation on his ID card.  Id. at 26:15-17.  Mineau said he could not correct the problem and

16  that plaintiff should talk to his counselor.  Id. at 26:21-22.  Mineau avers he did not have the

17  authority to change an inmate's ethnicity designation in his central file and did not have access to

18  OBIS to change the ethnicity in the database.  Mineau Decl. ¶¶ 7-8.

19  /////

20  /////

21

22  　　　[2] Defendants maintain that plaintiff did not raise questions about his classification as
23  Mexican when he appeared at an Initial Classification Committee Hearing on September 21,
   2005, see Anderson Decl. ¶17, and identify Exhibit C to the Anderson Declaration as a report of
24  that hearing.  They are incorrect: while Exhibit C mentions the initial hearing of September 21,
   the document memorializes hearings on July 28, 2006 and November 23, 2005.  At the
25  November 2005 hearing, plaintiff told the committee that he is Cuban, not black, and should be
   housed with those designated "other."  Although paragraph 17 of Anderson's declaration is
26  simply not credible, the court does not find the "facts" it recounts to be material to the resolution
   of the motion for summary judgment.

1    Plaintiff sent two requests for a meeting with his correctional counselor, defendant

2  Taylor.  Armentero Depo. at 24:5-6; Am. Compl. at 5A.  On November 3, 2005, plaintiff was

3  scheduled to see Taylor, but was hit in the knee.  Id. at 28:2-3, 17-18.  Taylor came to plaintiff's

4  cell and told him he would have a classification review where he could ask that his ethnicity be

5  changed.  Id. at 24:24-25.  This review never occurred and Taylor never followed up to fix the

6  problem.  Id. at 25:2, 33:4-5.

7    On November 23, 2005, plaintiff appeared before an Institution Classification

8  Committee (ICC) for review of an order removing him from general population based on

9  suspicion that he had participated in a riot.  Anderson Decl. ¶ 21 & Exs. C & D.  According to

10  plaintiff, he was removed from general population only because he was designated as "Mexican."

11  Armentero Depo. 23:6-7.  Plaintiff told the committee he is Cuban, not black, and should be

12  housed with those designated "other."  Anderson Decl. ¶¶ 21-22 & Exs. C & D; Declaration of

13  A. Orozco (Orozco Decl.) ¶ 4.  Plaintiff did not say he would be in danger if released back to

14  general population.  Orozco Decl. ¶ 6 & Ex. A; cf. Armentero Depo. at 53:17.  None of the

15  defendants in this case were members of the ICC that met in November 2005.  Anderson Decl.,

16  Exs. C & D.

17    Plaintiff's ethnicity was changed to "other" on February 10, 2006 as the result of a

18  grievance.  Anderson Decl. ¶¶ 24-25 & Ex. F.  Even so, his identification card was not changed

19  on that day.  Armentero Depo. at 57:4-6.

20    Before plaintiff's ethnicity designation was changed, he was approached by

21  members of different ethnic groups who questioned why he was "running" with certain inmates.

22  Armentero Depo. at 23:17-18.  In addition, if he is misclassified, he says:

23       . . . I can have a problem with the whole population, the inmate
        population, according to the policy that the gangs and groups inside
24       the prison running. . . .If I . . .am classified like Mexican and I have
        to share a cell with another . . .ethnicity, I'm going to have a
25       problem.

26  /////

6

1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2  . . . [W]hen the Mexican fighting, you see, I have to be locked
3  down.  Why?  Because I'm classified as Mexican.  And then if I
   have to go eat with the Mexican, my people going to say what I'm
4  doing over there in the other side with the Mexican.

5 Armentero Depo. at 17:24-18:4; 18:21-19:1.  Those classified as "other" might then retaliate

6 against him "because what I have to do with the Mexican if I'm Cuban?"  Id. at 19:7-8.

7 Moreover:

8  [A]ccording to the gang policy . . . the life that we're living inside
   the population, if I'm black, I have to run with black.  If I decide
9  run with the white, I have to let them know to both sides, both
   group. . . .
10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

11  But if I don't do that, I can have problems.  I can't refuse my
   ethnicity and say, no, I don't want to run with Mexican, I want to
12  run with black.  If the black accept me, it's all right.  But not, if I
   don't do like that, I can have a problem.
13

14 Id. at 19:13-24.  "[I]f I'm Cuban, I'm not supposed to run with Mexican."  Id. at 27:24-25.

15  In addition, because of his classification as Mexican, he was on lockdown

16 frequently, during the time the Mexicans were locked down.  Id. at 20:13-16.  When the

17 Mexicans and blacks were fighting, he was "punished with the Mexicans, because I am running

18 with the Mexicans."  Id. at 65:6-9.

19  C. Analysis

20  Defendants characterize plaintiff's complaint as raising a failure to protect claim

21 under the Eighth Amendment and argue that plaintiff did not put them on notice of his fears.

22 Def's' Mem. P. & A. In Supp. Mot. For Summ. J. at 6-7.  In his amended complaint, however,

23 plaintiff alleges he was denied his rights to due process and equal protection when "the

24 defendants jeopardized his life when they misclassified him as Mexican ethnicity . . . following

25 the practice of CDCR and Folsom Administration to separate the inmates according to their

26 ethnicity."  Am. Compl. at 5.

7

1    Plaintiff's equal protection claim is not typical, for he does not allege that he was

2    housed differently or denied access to prison programs or services because of his race; instead, he

3    claims that because he was misclassified as Mexican, he was subjected to segregated housing and

4    the loss of privileges that occurred when Mexicans were locked down after black-hispanic

5    violence, events that would not have occurred had he been classified as Cuban or "other." <u>See</u>

6    <u>Johnson v. California</u>, 543 U.S. 499, 505-07 (2005) (finding that California's policy of using

7    racial classification for housing was subject to strict scrutiny); <u>Morrison v. Garraghty</u>, 239 F.3d

8    648 (4th Cir. 2001) (invalidating policy that allowed only Native American inmates to seek

9    permission to possess materials related to Native religion).

10    In <u>Paine v. Baker</u>, 595 F.2d 197 (4th Cir. 1979), the Court of Appeals recognized

11    that

12         in certain limited circumstances a claim of constitutional
           magnitude is raised where a prisoner alleges (1) that information is
13         in his file, (2) that the information is false, and (3) that it is relied
           on to a constitutionally significant degree.
14

15    <u>Id</u>. at 201; <u>see also</u> <u>Hernandez v. Johnston</u>, 833 F.2d 1316, 1319 (9th Cir. 1987) (declining to

16    reach question whether there is liberty interest in accurate information in prison file because it

17    found Washington state regulations created such an interest); <u>but see</u> <u>Velasquez v. Woods</u>, 329

18    F.3d 420, 421-22 (5th Cir. 2003) (no constitutional right to expunge false information from

19    prison file).  In this case, plaintiff claims he was subjected to segregated housing and put in

20    danger by the misclassification.

21    Even though defendants have not addressed these claims directly, defendants

22    Mineau, Levan and Burchfield are entitled to summary judgment.  They have alleged they were

23    not allowed to change an inmate's racial or ethnic designation and the equipment that produced

24    plaintiff's identification card simply reproduced the information contained in the central database

25    and could not be overridden.

26    /////

8

1    To be liable for a civil rights violation, a state actor must act or fail to act in a

2    manner that deprives another of a constitutional right.  Leer v. Murphy, 844 F.2d 628, 632 (9th

3    Cir. 1988).  The Ninth Circuit explains:

4    > A person deprives another of a constitutional right, within the
     > meaning of section 1983, if he does an affirmative act, participates

5    > in another's affirmative acts, or omits to perform an act which he is
     > legally required to do that *causes* the deprivation of which [the

6    > plaintiff complains].  The inquiry into causation must be
     > individualized and focus on the duties and responsibilities of each

7    > individual defendant whose acts or omissions are alleged to have
     > caused a constitutional deprivation.

8

9    Id. at 633 (internal citation, quotation omitted; emphasis in original).  If a prison official does not

10   have the authority to act, he or she may not be liable for a constitutional deprivation.  Mayorga v.

11   Missouri, 442 F.3d 1128, 1132 (8th Cir. 2006).

12   Plaintiff has not rebutted defendants' evidence that neither Mineau, Levan nor

13   Burchfield had the authority to change plaintiff's racial designation in the database, in his central

14   file, or on his identification card.  Because plaintiff's claims stem from his misclassification on

15   his identification card, these defendants are entitled to summary judgment for on the record

16   before the court it is established they lacked the authority to change plaintiff's classification.

17   Defendants have presented no evidence on the question whether correctional counselor Taylor

18   had the authority to change plaintiff's classification; the record suggests she did, for it was K. J.

19   Anderson, also a correctional counselor, who undertook the change while reviewing plaintiff's

20   grievance.  Anderson Decl. ¶ 25 & Ex. F.  Defendant Taylor is not entitled to summary judgment.

21   II.  The Exhaustion Of Administrative Remedies

22   The Prison Litigation Reform Act (PLRA) provides that "no action shall be

23   brought with respect to prison conditions under section 1983 of this title, . . . until such

24   administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "Conditions of

25   confinement" subject to exhaustion have been defined broadly as "the effects of actions by

26   government officials on the lives of persons confined in prisons."  18 U.S.C. § 3626(g)(2); Smith

1  v. Zachary, 255 F.3d 446, 449 (7th Cir. 2001); see also Lawrence v. Goord, 304 F.3d 198, 200

2  (2d Cir. 2002).  Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532

3  U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines

4  and other critical procedural rules ...,"; Woodford v. Ngo, 548 U.S. 81, 90 (2006).  An inmate is

5  required to exhaust only those remedies which are available.  Booth, 532 U.S. at 738.

6  The grievance process must be completed before the inmate files suit; exhaustion during the

7  pendency of the litigation will not save an action from dismissal.  McKinney v. Carey, 311 F.3d

8  1198, 1200 (9th Cir. 2002).

9          California prison regulations provide administrative procedures in the form of one

10 informal and three formal levels of review to address an inmate's claims.  See Cal. Code Regs.

11 tit. 15, §§ 3084.1-3084.7.  Administrative procedures generally are exhausted once a plaintiff has

12 received a "Director's Level Decision," or third level review, with respect to his issues or claims.

13 Cal. Code Regs. tit. 15, § 3084.5.

14         Finally, to satisfy the exhaustion requirement, a grievance must alert prison

15 officials to the claims the plaintiff has included in the complaint.  Porter v. Nussle, 534 U.S. 516,

16 524-25 (2002) (purpose of exhaustion requirement is to give officials "time and opportunity to

17 address complaints internally before allowing the initiation of a federal case"); Brown v. Sikes,

18 212 F.3d 1205, 1209 (11th Cir. 2000) (1997e(a) requires that a prisoner provide as much relevant

19 information as he reasonably can in the administrative grievance process).

20         A motion to dismiss for failure to exhaust administrative remedies prior to filing

21 suit arises under Rule 12(b) of the Federal Rules of Civil Procedure.  Wyatt v. Terhune, 315 F.3d

22 1108, 1119 (9th Cir. 2002), cert. denied sub nom. Alameida v. Wyatt, 540 U.S. 810 (2003).  In

23 deciding a motion to dismiss for a failure to exhaust non-judicial remedies, the court may look

24 /////

25 /////

26 /////

1    beyond the pleadings and decide disputed issues of fact.  Id. at 1119-20.  Defendants bear the

2    burden of proving plaintiff's failure to exhaust.  Id. at 1119.  To bear this burden:

3                 a defendant must demonstrate that pertinent relief remained
                  available, whether at unexhausted levels of the grievance process
4                 or through awaiting the results of the relief already granted as a
                  result of that process.  Relevant evidence in so demonstrating
5                 would include statutes, regulations, and other official directives
                  that explain the scope of the administrative review process;
6                 documentary or testimonial evidence from prison officials who
                  administer the review process; and information provided to the
7                 prisoner concerning the operation of the grievance procedure in
                  this case,. . . .  With regard to the latter category of evidence,
8                 information provided the prisoner is pertinent because it informs
                  our determination of whether relief was, as a practical matter,
9                 "available."

10   Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005).

11        A.  Facts

12            Defendants have presented declarations from Dan Johnson, Appeals Coordinator

13   at FSP, and N. Grannis, chief of the Inmate Appeals Branch.  Johnson avers that he has reviewed

14   plaintiff's appeal file maintained at FSP and has not located any grievance "concerning

15   correctional officers C. Levan, F. Burchiefield, J. Mineau, nor L. Taylor" or any grievance

16   alleging that correctional officers knew plaintiff was in danger because he was classified as

17   "Mexican."  Declaration of Dan Johnson (Johnson Decl.) ¶¶ 7-9.  Johnson concedes that plaintiff

18   did file a grievance, given log number FSP 06-00101, asking in part that his classification be

19   changed from "Mexican" to "other."  Johnson Decl. ¶ 10 & Ex. A.  This grievance did not name

20   the defendants in this action or suggest that plaintiff's life was in danger.  Johnson Decl. ¶ 11.

21   /////

22   /////

23   /////

24   /////

25   /////

26   /////

1        This grievance was partially granted:

2        ISSUE: In you [sic] appeal, you are requesting ethnicity change
         from Mexican to Other. . . .

3

4        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

5        INVESTIGATION: A review of your Central File revealed that the
         Legal Status Summary and Institutional Staff Recommendation
         Summary documents your ethnicity as Mexican/Hispanic;

6        however, your fingerprint card and Rap Sheet documents you as
         Cuban and the Institutional Staff Recommendation Summary notes

7        your family is from Cuba.  It is obvious you are Cuban based on
         your speech pattern/accent witnessed during the interview process.

8

9        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

10       <u>DECISION</u>:

11       Due to the above information, this appeal is partially granted.
         Your ethnicity was corrected to reflect "Other" on 2-10-06.

12   Johnson Decl. ¶ 12, Ex. B; Anderson Decl. ¶ 25 & Ex. F.

13        Grannis avers that plaintiff did not secure Director's Level review during the

14   period September 2005 through September 2006 and that four appeals were screened out because

15   plaintiff had not secured a second level review.  Declaration of N. Grannis (Grannis Decl.)

16   ¶¶ 3-4.

17        In <u>Jones v. Bock</u>, 549 U.S. 199 (2007), the Supreme Court recognized that

18   "compliance with prison grievance procedures. . . is all that is required by the PLRA to 'properly

19   exhaust.'"  <u>Id</u>. at 922.  It found that the prison's requirements rather than the PLRA "define the

20   boundaries of proper exhaustion."  <u>Id</u>. at 923.

21        Nothing in California's regulations and nothing on the grievance form itself

22   requires an inmate to name those correctional officials he believes are responsible for the issue

23   that is the subject of the grievance; in fact, the form simply asks the inmate to "Describe

24   Problem"  and to specify "Action Requested."  <u>See</u> Johnson Decl., Ex. A at 1.  On this grievance

25   form, plaintiff complained that he was put in lockdown as the result of a riot involving Mexican

26   inmates, and asked that correctional officials "make possible that my true nationality and

                                              12

ethnicity be changed from my ID card from Mexican to (other) because you know I am not black nor Mexican. . . . ." Id.  This description corresponds to the issues raised in the complaint, which are not failure to protect but rather due process and equal protection violations.

It is true that plaintiff did not pursue this grievance beyond the first level, but this does not translate into a finding that he failed to exhaust available administrative remedies in this case.  In Booth, the Supreme Court recognized that for a remedy to be "available," there must be the "possibility of some relief. . . ." Booth, 532 U.S. at 738.  Relying on Booth, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available.

Brown v. Valoff, 422 F.3d at 935.  In Brown, the inmate filed a grievance claiming that Valoff had used pepper spray against him.  The grievance was denied at the first level, but the second level decision was "partially granted" because the incident was referred to the Office of Internal Affairs for a staff misconduct investigation.  Id. at 931.  The second level decision also informed Brown that monetary compensation was "beyond the scope of the appeals process."  Brown did not seek a Director's Level review.

The Ninth Circuit found that Brown had exhausted all available remedies even though he did not seek a Director's Level determination; after Brown's appeal was "partially granted" at the second level and he was informed he would not learn if any disciplinary action against Valoff was determined to be necessary, no further remedies were available.  The court

/////
/////
/////
/////
/////

1  relied in part on the CDCR Administrative Bulletin's definition of the "partially granted"

2  determination of an appeal:

> Whether an appeal directed to the staff complaint procedure is
> given a "granted" or "partially granted" response depends not on
> whether there remains some possibility of obtaining relief through
> the appeals process, but on "the action requested by appellant."
> Here, the "action requested by the appellant" was monetary
> compensation, which was, as the response informed him right after
> telling him that his staff complaint would be thoroughly
> investigated, "beyond the scope of the appeals process . . . ."

8  Id. at 939; see also Ross v. County of Bernalillo, 365 F.3d 1181, 1186-87 (10th Cir. 2004),

9  overruled on other grounds, Jones v. Bock, 549 U.S. at 199; Brady v. Attygala, 196 F.Supp.2d

10  1016 (C.D. Cal. 2002).

11       In this case, plaintiff's grievance was "partially granted" in that his racial

12  classification was changed from Mexican to other, a perfect correspondence with the "Action

13  Requested" portion of the grievance.  Defendants have not suggested what remedies remained

14  available to plaintiff once prison authorities undertook to change his designation.  They have not

15  borne their burden of proving that plaintiff failed to exhaust his administrative remedies.

16       IT IS HEREBY RECOMMENDED that defendants' motion for summary

17  judgment or summary adjudication (docket no. 26) be granted as to defendants Levan, Burchfield

18  and Mineau but denied as to defendant Taylor, and that the matter be set for pretrial conference,

19  trial confirmation hearing and trial if the district court adopts this recommendation.

20       These findings and recommendations are submitted to the United States District

21  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

22  days after being served with these findings and recommendations, any party may file written

23  objections with the court and serve a copy on all parties.  Such a document should be captioned

24  /////

25  /////

26  /////

1   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2   shall be served and filed within ten days after service of the objections.  The parties are advised

3   that failure to file objections within the specified time may waive the right to appeal the District

4   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5   DATED:  September 3, 2008.

6

7   _____

8   U.S. MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   2 arm1838.57