1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10  LUIS LORENZO ARMENTERO,

11              Plaintiff,                No. CIV S-06-1838 GEB KJM P

12       vs.

13  C. LEVAN, et al.,

14              Defendants.               FINDINGS AND RECOMMENDATIONS

15  _____/

16              Plaintiff is a state prison inmate proceeding pro se with a civil rights action under

17  42 U.S.C. § 1983.  In his amended complaint, he alleged that defendants Levan, Burchfield,

18  Mineau and Taylor, all employees of the California Department of Corrections and

19  Rehabilitation (CDCR), improperly classified him as "Mexican" when they knew his ethnicity

20  should have been listed as "other" because he is Cuban.  He further alleged that the improper

21  classification places him in jeopardy because the "black inmates and Mexican inmates, prison

22  gang members as well as his own ethnicity inmates, all will retaliate upon him."  Amended

23  Complaint (Am. Compl.) at 5(A).

24  /////

25  /////

26  /////

1         On January 7, 2008, defendants Levan, Burchfield and Mineau filed a motion for

2   summary judgment on the merits, while defendant Taylor sought summary judgment on the

3   ground that plaintiff had not exhausted his administrative remedies as to her.  Docket No. 26.

4   This court recommended that summary judgment be granted as to Levan, Burchfield and Mineau

5   and denied as to Taylor.   Docket No. 41.   The district court adopted these recommendations and

6   granted defendant Taylor's request to file a renewed motion for summary judgment.  This motion

7   is now before the court.

8   I. <u>Summary Judgment Standards Under Rule 56</u>

9         Summary judgment is appropriate when it is demonstrated that there exists "no

10  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

11  matter of law."  Fed. R. Civ. P. 56(c).

12        Under summary judgment practice, the moving party

13      always bears the initial responsibility of informing the district court
        of the basis for its motion, and identifying those portions of "the
14      pleadings, depositions, answers to interrogatories, and admissions
        on file, together with the affidavits, if any," which it believes
15      demonstrate the absence of a genuine issue of material fact.

16  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

17  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

18  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

19  to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment should be entered,

20  after adequate time for discovery and upon motion, against a party who fails to make a showing

21  sufficient to establish the existence of an element essential to that party's case, and on which that

22  party will bear the burden of proof at trial.  <u>See id.</u> at 322.  "[A] complete failure of proof

23  concerning an essential element of the nonmoving party's case necessarily renders all other facts

24  immaterial."  <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so long as

25  whatever is before the district court demonstrates that the standard for entry of summary

26  judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u> at 323.

1    If the moving party meets its initial responsibility, the burden then shifts to the

2    opposing party to establish that a genuine issue as to any material fact actually does exist.  See

3    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

4    establish the existence of this factual dispute, the opposing party may not rely upon the

5    allegations or denials of its pleadings but is required to tender evidence of specific facts in the

6    form of affidavits, and/or admissible discovery material, in support of its contention that the

7    dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

8    must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

9    of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

10   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

11   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

12   return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

13   1436 (9th Cir. 1987).

14   In the endeavor to establish the existence of a factual dispute, the opposing party

15   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

16   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

17   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

18   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

19   genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

20   committee's note on 1963 amendments).

21   In resolving the summary judgment motion, the court examines the pleadings,

22   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

23   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

24   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

25   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

26   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

1    produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

2    Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

3    1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

4    show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

5    as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

6    'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

7           On May 7, 2007, the court advised plaintiff of the requirements for opposing a

8    motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

9    F.3d 952, 957 (9th Cir. 1998) (en banc), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir.

10   1988).

11   II.  Facts

12          Plaintiff entered the state prison system on July 28, 2005, accompanied by a

13   probation report, which identified him as "Hispanic."  Declaration of K.J. Anderson (Anderson

14   Decl.) ¶¶ 4, 6-7 & Ex. B.  Prison officials at North Kern State Prison (NKSP) Reception Center

15   used this information to identify plaintiff as Mexican.  Id. ¶ 7.  Plaintiff's ethnicity as "Mexican"

16   was entered into his central file and in OBIS, an electronic database that maintains information

17   about CDCR inmates.  Id.  This information also was included on the CDC-135 Transfer Order

18   that accompanied plaintiff from NKSP to Folsom State Prison (FSP) in September 2005, at

19   which point he was issued an i.d. card saying he was Mexican, even though he "told them three

20   times" he was Cuban.  Declaration of J. Mineau (Mineau Decl.) ¶¶ 6, 9 & Ex. A; Deposition of

21   Luis Armentero (Armentero Depo.) at 11:13-12:4; Anderson Decl. ¶ 13 & Ex. A.

22          Plaintiff appeared before a classification committee for initial review on

23   September 21, 2005 and was released to the general prison population.  Anderson Decl. ¶¶ 17-20.

24          In October, plaintiff sent three requests for a meeting with his correctional

25   counselor, defendant Taylor.  Armentero Depo. at 24:5-6, 30:4-5; Am. Compl. at 5A.  In one

26   request, plaintiff asked to review his central file–an "Olsen" review"–and in two other requests

4

1   he asked for an interview  for "change of ethnicity" without further elaboration.  Armentero

2   Depo. at 29:24-30:6, 32:15-17; Original Complaint (Docket No. 1) at 26-28[1] (request for

3   interview forms).  Defendant Taylor never called plaintiff into her office.  Armentero Depo. at

4   29:4-5, 30:4.  Taylor did maintain office hours, but plaintiff claimed that "most times she never

5   was in the office. . . ."  Id. at 29:14-18, 30:7-8, 52:4, 52:19-22.   He did go to her office at least

6   once, apparently for the Olsen review of his file.   Id. at 29:22-25.

7           On November 3, 2005, plaintiff was scheduled to see Taylor, but was hit in the

8   knee.  Id. at 28:2-3, 17-18.  That same day, Taylor came to plaintiff's cell and told him he would

9   have a classification review where he could ask that his ethnicity be changed.  Id. at 24:24-25.

10   This review never occurred and Taylor never followed up to fix the problem.   Id. at 25:2, 33:4-5.

11           Plaintiff's ethnicity was changed to "other" on February 10, 2006 as the result of a

12   grievance.  Anderson Decl. ¶¶ 24-25 & Ex. F.

13           Before plaintiff's ethnicity designation was changed, he was approached by

14   members of different ethnic groups who questioned why he was "running" with certain inmates.

15   Armentero Depo. at 23:17-18.  In addition, if misclassified, he testified:

16           . . . I can have a problem with the whole population, the inmate
             population, according to the policy that the gangs and groups inside
17           the prison running. . . .If I . . .am classified like Mexican and I have
             to share a cell with another . . .ethnicity, I'm going to have
18           problems.

19           . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

20           . . . [W]hen the Mexican fighting, you see, I have to be locked
             down.  Why?  Because I'm classified as Mexican.  And then if I
20           have to go eat with the Mexican, my people going to say what I'm
21           doing over there in the other side with the Mexican.

22   Id. at 17:24-18:4, 18:21-19:1.  Those classified as "other" might then retaliate against him

23   /////

24   _____

25           [1]  The court relies on the page numbers assigned by its CM-ECF system.   The court
     deems these documents to be admissions, authenticated through their distinctive characteristics.
     McKinley v. Afram Lines (USA) Co., Ltd., 834 F.Supp. 510, 512-13 (D. Mass. 1993); Fed. R.
26   Evid. 901(b)(4).

1    "because what I have to do with the Mexican if I'm Cuban?"  Id. at 19:7-8.   He explained, "if

2    I'm Cuban, I'm not supposed to run with Mexican."  Id. at 27:24-25.

3              In addition, because of his classification as Mexican, he was on lockdown

4    frequently, during the time the Mexicans were locked down.  Id. at 20:13-16.  When the

5    Mexicans and blacks were fighting, he was "punished with the Mexicans, because I am running

6    with the Mexicans."  Id. at 65:6-9.

7              C.  Analysis

8              In the amended complaint,  plaintiff alleges he was denied his rights to due

9    process and equal protection when "the defendants jeopardized his life when they misclassified

10   him as Mexican ethnicity . . . following the practice of CDCR and Folsom Administration to

11   separate the inmates according [to] their ethnicity."  Am. Compl. at 5.   In the findings and

12   recommendations on the earlier summary judgment motion, this court recognized that plaintiff's

13   equal protection claim is not typical, for he does not allege he was housed differently or denied

14   access to prison programs or services because of his race; instead, he claims that because he was

15   misclassified as Mexican, he was subjected to segregated housing and the loss of privileges that

16   occurred when Mexicans were locked down after black-hispanic violence, events that would not

17   have occurred had he been classified as Cuban or "other."  See Johnson v. California, 543 U.S.

18   499, 505-07 (2005) (finding California's policy of using racial classification for housing subject

19   to strict scrutiny); Morrison v. Garraghty, 239 F.3d 648 (4th Cir. 2001) (invalidating policy that

20   allowed only Native American inmates to seek permission to possess materials related to Native

21   religion).   In Paine v. Baker, 595 F.2d 197 (4th Cir. 1979), the Court of Appeals recognized that

22              in certain limited circumstances a claim of constitutional
              magnitude is raised where a prisoner alleges (1) that information is
23              in his file, (2) that the information is false, and (3) that it is relied
              on to a constitutionally significant degree.
24

25   Id. at 201; see also Hernandez v. Johnston, 833 F.2d 1316, 1319 (9th Cir. 1987) (declining to

26   reach question whether there is liberty interest in accurate information in prison file because it

                                                      6

1  found Washington state regulations created such an interest); but see Velasquez v. Woods, 329

2  F.3d 420, 421-22 (5th Cir. 2003) (no constitutional right to expunge false information from

3  prison file).  Plaintiff claims he was subjected to segregated housing and put in danger by the

4  misclassification; he alleges, in essence, that the information about his ethnicity was used to deny

5  him equal protection of the laws.

6          Defendant Taylor argues that plaintiff did not have a liberty interest in remaining

7  free from administrative segregation or from lockdowns or in a particular classification.  Mem.

8  P. & A. in Supp. Mot. for Summ. J. (MSJ) (Docket No. 48-2) at 6-7.  She also argues that if

9  plaintiff had a liberty interest in the classification, plaintiff's requests about changing his

10 ethnicity were insufficient for her to be deemed to have violated his rights.  She relies on a

11 regulatory provision, which provides in relevant part:

12          (a) Any person on whom the department maintains a record or file
            containing personal information has the right to inspect their record
13          . . . and to request amendment to correct outdated, inaccurate or
            incomplete information.
14
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
15
16          (2) Requests to amend a record or file shall be
            submitted in writing, including documentary
17          evidence to support the proposed amendment, to the
            source of the contested information, or if the source
18          is not available, to the office or official responsible
            for maintaining the record.

19 15 Cal. Code Regs. § 3450.

20          To be liable for a civil rights violation, a state actor must act or fail to act in a

21 manner that deprives another of a constitutional right.  Leer v. Murphy, 844 F.2d 628, 632 (9th

22 /////

23 /////

24 /////

25 /////

26 /////

1    Cir. 1988).  The Ninth Circuit explains:

2              A person deprives another of a constitutional right, within the
             meaning of section 1983, if he does an affirmative act, participates
3            in another's affirmative acts, or omits to perform an act which he is
             legally required to do that *causes* the deprivation of which [the
4            plaintiff complains].  The inquiry into causation must be
             individualized and focus on the duties and responsibilities of each
5            individual defendant whose acts or omissions are alleged to have
             caused a constitutional deprivation.

6

7    Id. at 633 (internal citation, quotation omitted; emphasis in original).   In this case, defendant

8    Taylor was not legally obligated to change plaintiff's designation from Mexican to Cuban unless

9    plaintiff submitted his request in writing, supported by the necessary documentation.

10   15 Cal.Code Regs. § 3450(a)(2).  Because there is no disputed issue of material fact as to

11   causation, defendant Taylor is entitled to summary judgment.

12           IT IS HEREBY RECOMMENDED defendant Taylor's motion for summary

13   judgment (docket no. 48) be granted.

14           These findings and recommendations are submitted to the United States District

15   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

16   days after being served with these findings and recommendations, any party may file written

17   objections with the court and serve a copy on all parties.  Such a document should be captioned

18   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

19   shall be served and filed within ten days after service of the objections.  The parties are advised

20   that failure to file objections within the specified time may waive the right to appeal the District

21   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

22   DATED:  August 11, 2009.

23

24                                                        _____
                                                          U.S. MAGISTRATE JUDGE
25

26   2/arme1838.57(2)

8